UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROY CHETAL,

      Plaintiff,        **MEMORANDUM**
                  **AND ORDER**
  -v.-              05-CV-3014 (DRH) (ARL)

BLS FUNDING CORP.,

      Defendant.
-------------------------------------------------------------X

**Appearances:**

**For the Plaintiff:**
**FRANK & ASSOCIATES, P.C.**
500 Bi-County Blvd, Suite 112N
Farmingdale, New York 11735
By: Pamela J. Eisner, Esq.

**For the Defendant:**
**COZEN O'CONNOR**
1055 Franklin Avenue, Suite 302
Garden City, New York 11530
By: Michael C. Schmidt, Esq.

**HURLEY, Senior District Judge:**

   Plaintiff Roy Chetal ("Plaintiff") filed the present action against defendant BLS Funding Corp. ("Defendant" or "BLS") claiming that he was discriminated against based on his national origin and in retaliation for his complaints of national origin discrimination. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated below, the motion is denied.

## BACKGROUND

   The following material facts, drawn from the parties' summary judgment submissions, are undisputed unless otherwise noted.

BLS is a full-service mortgage banker, which began operating in January 1995. It currently has mortgage banker licenses in more than thirty states. Its retail sales force consists primarily of loan processors, team leaders and loan officers. The sales force is broken down into sales teams ranging from 5 to 30 employees. The teams are run by sales managers, who are also referred to as team leaders. Confidential "leads' are generated and distributed to team leaders, who ultimately bring the leads to loan officers. The loan officers then contact potential customers to obtain sensitive personal information, and to determine if the customer is eligible for the loan. The loan officer is the contact person for the borrower and is responsible for collecting documentation and arranging for funding of the loan. Loan processors package the loan documents for presentation to the lender.

Plaintiff is of Indian descent and his religion is Hindu. He began working at BLS on December 10, 2002 and worked as a loan officer on BLS' "fast cash" team during the entire course of his employment. Plaintiff's immediate supervisors were Jay and David Cassuto. Plaintiff was brought to the company by Jay Cassuto, who, together with his brother David, subsequently became the team leaders for the "fast cash" team. David and Jay Cassuto reported to Dan Manci, Vice President of BLS. Sometime in December 2003, BLS learned that Plaintiff had been discussing the possibility of leaving BLS to go to a competitor. In January 2004, Plaintiff was terminated.

What happened between the time Plaintiff was hired and when he was fired is in dispute.

According to Plaintiff, he was subjected to name calling on a nearly daily basis. He claims that his supervisors, Jay and David Cassuto, subjected him to racial comments such as

"Dot-Head," "Bin Laden," "Sand Nigger," "Snake Charmer," "Dot-boy," "Punjabi MC," and "Indian," in an insulting tone. His co-employees called him names as well. Despite Plaintiff's complaints to both David and Jay that things were out of control and he wanted the name-calling to stop, the derogatory comments continued. In fact, Dan Manci, a vice president, overheard David calling Plaintiff names and told him that such conduct was inappropriate and should stop. According to Plaintiff, his job performance became affected by the constant barrage of derogatory names and he began to look for a new job. On January 10, 2004, Plaintiff was called in to see Dan Manci and David Cassuto. According to Plaintiff, Manci said, "We understand that you are looking for work elsewhere." Plaintiff replied that he was and that it was "because of the harassment. I want it to stop. I made several complaints. Nobody has done anything about it. That is why I am looking to go elsewhere." Manci replied that they should part ways and that BLS was going to have to let Plaintiff go.

Defendant's version of the relevant events is, of course, different. According to BLS, Plaintiff and the other members of his team engaged in "sophomoric behavior" including "name calling and banter in the context of playful exchanges between and among friends."[1] BLS contends that the name calling went both ways – Chetal admits to having called co-workers "Polack" and "guinea." BLS denies that it made any decisions about the terms and conditions of Plaintiff's employment based on his national origin. According to BLS, it learned that Plaintiff had been discussing the possibility of leaving BLS to go to a competitor and it believed he had in

---

[1] The deposition testimony of two of Plaintiff's co-workers, Jason Riley and Bob Szwaja supports Defendant's version of event to the extent that both testified that it started off as "a joke." On the other hand, Szwaja testified that it began to bother the Plaintiff and Riley testified that at the end "it got meaner the way they said it, and loud. It was getting worse and progressed more and more."

fact accepted another job. BLS believed his performance began to decrease at that time and, because he was compensated on the number of loans he submitted, found it curious that he stopped submitted loans. BLS "also learned in early January 2004 that Plaintiff may have been sending upwards of 80 confidential loan 'leads' from his computer to an outside source" and "may have been calling" BLS appraisers to try to get certain loans recertified away from BLS, conduct which Plaintiff denies. According to BLS, vice president Kolman Brown made the decision that Plaintiff "could not be permitted to work at BLS if he had already accepted a job with a competitor and if he was acting in a manner to set himself up for another job elsewhere." Brown asked Manci to confront Plaintiff with what the company had learned. A meeting was held between Manci, Plaintiff and David Cassuto. At the end of that meeting it was determined that Plaintiff should leave the company.

## DISCUSSION

*I.     Applicable Law and Legal Standards*

*A.     Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine triable factual issue exists when the moving party

demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an

essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).

### B. *The McDonnell-Douglas Burden-Shifting Methodology*

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to

prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859

F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). A discrimination claimant may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F. Supp.2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001).

However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

## II. Plaintiff Has Raised a Genuine Issue of Material Fact as to his Discrimination Claims

To establish a prima facie case of discrimination under either Title VII or New York law[2], a plaintiff must show that: (1) he belonged to a protected class, (2) was qualified for the position he held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Defendant concedes that Plaintiff has established the first three elements of his prima facie case, viz. that he was a member of a protected class and that he was qualified and he suffered an adverse employment action. Defendant contends that Plaintiff cannot make a prima facie showing that his termination occurred in circumstances giving rise to an inference of discrimination. Alternatively, Defendant argues that there is no evidence that its reason for terminating Plaintiff was pretextual and discrimination was the actual reason for his termination. The Court disagrees.

### A. *Inference of Discrimination*

A Title VII plaintiff may establish the last element of the prima facie case in a number of different ways depending on the specific facts of the case. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). Here, Plaintiff argues that a juror could infer that Defendant acted with a discriminatory motive because of the constant barrage of racist comments to which he was subjected. These comments were made by Jay and Dave Cassuto and

---

[2]*See, e.g., Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) (applying burden-shifting rules of Title VII to discrimination claims arising under New York City and State law); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims.");

Dan Manci was aware of the comments. Evidence of discriminatory comments "can constitute 'direct evidence' and are adequate to make out a prima facie case, even where uncorroborated." *Back v. Hastings on Hudson Sch. Dist.,* 365 F.3d 107, 124 (2d Cir. 2004). Both Dave Cassuto and Dave Manci were plaintiff's supervisors and played a substantial role in the decision to terminate. Repeated stereotypical comments made by a supervisor who played a substantial role in the decision to terminate are sufficient to support a finding of discriminatory motive. *Id.* at 125 n.12.

Moreover, Plaintiff's testimony that he informed Manci that the reason he was looking for a new job was because of the racial harassment and Manci fired him anyway is sufficient to show nexus to the adverse employment decision. *Cf. Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998); *see also Tomassi v. Insignia Financial Group, Inc.* 478 F.3d 111, 115 (2d Cir. 2007) ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be."); *Revere v. Bloomingdale's Inc.*, No. 03 CV 5043, 2006 WL 3314633, at *7. (E.D.N.Y. Nov. 14, 2006).

    **B.**  ***Defendant's Legitimate, Non-Discriminatory Reasons for the Adverse Actions***

Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. As noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous.

Here, BLS contends that it had a legitimate non-discriminatory reason for firing Plaintiff. According to the affidavit of Kolman Brown, BLS "learned that Plaintiff had been discussing the

possibility of leaving [it] to go to a competitor" and also that "Plaintiff may have been sending upwards of 80 leads from his [work] computer to an outside source for use by Plaintiff himself, or a third party, and that Plaintiff may have been calling appraisers to try to get certain loans recertified away from [BLS]."

Based on the above, the Court finds that BLS has articulated legitimate, non-discriminatory reasons for Plaintiff's termination. Although the Court is underwhelmed by the proffered unsubstantiated information forming the alleged reason for Plaintiff's termination, Defendant has satisfied its burden. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988) ("A business decision need not be good or even wise. It simply has to be nondiscriminatory . . . .") (citation and internal quotations marks omitted).

### E. *Pretext*

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and that the employer was motivated at least in part by unlawful discrimination.

In an attempt to demonstrate that Defendant's proffered reasons are merely a pretext for unlawful discrimination, Plaintiff points to the fact that he admitted to Manci that he was looking for a new job and told him it was because of the harassment which he had complained about but about which no action was taken.

Construing the evidence in the light most favorable to Plaintiff, the Court finds that there is a sufficient basis for a trier of fact to doubt Defendant's proffered evidence and ultimately find that the reasons offered by Defendant were pretextual. Here, there is sufficient evidence for a juror to conclude that what may have started as sophomoric banter escalated to the

point that Plaintiff had to repeatedly ask Jay and David Cassuto to stop, that Dave Manci was aware of the name calling and that Plaintiff told Manci he was looking for another job because of the harassment and that Manci fired plaintiff anyway. In short, Plaintiff has presented sufficient evidence to raise a question of fact as to whether his firing was discriminatory. *Cf. Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998) (holding that a strong temporal connection between the plaintiff' complaint along with other circumstantial evidence is sufficient to raise an issue with respect to pretext), *abrogated in part on other grounds*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Defendant makes much of the fact that Plaintiff failed to lodge a complaint with its human resource department or otherwise comply with BLS' complaint procedure. Although 'the failure to seek administrative assistance" is "a fact that plainly may be considered in weighing testimony . . . the weighing of evidence and the decision as to which of competing inferences is to be drawn is solely within the province of the jury. *Fitzgerald v. Henderson,* 251 F.3d 345, 366 (2d Cir. 2001). Similarly, the fact that Plaintiff may have engaged in name calling or socialized with the same co-workers who called him names are factors for the jury to weigh at trial. Finally, the Court rejects Defendant's contention that it should consider the name calling in context and that "[a]t worst, Plaintiff and all members of their team were engaged in 'equal opportunity derogatory references.'" First, the relevant setting is an office, not a locker room. Racial slurs have no place in an office. Second, as pointed out by the Court earlier, the deposition testimony of Jason Riley supports an inference that at some point it was no longer a "joke" but had progressed and "got meaner."

### F. Retaliation

Defendant also argues that to the extent Plaintiff raises a retaliation claim, it should be dismissed for lack of any causal connection between any purported complaints and any adverse action taken by BLS. However, the Court disagrees with Defendant and finds that a reasonable view of the record could support a claim of retaliation.

"In order to present a prima facie case of retaliation under Title VII . . . , a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" *Kessler*, 461 F.3d at 205-206 (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the employee to demonstrate pretext. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001).

Plaintiff's testimony that he repeatedly asked Jay and David Cassuto to stop the name calling and that he told Manci and Cassuto he was looking for a job because of the racial harassment constitutes evidence that plaintiff engaged in protected activity. In order for Plaintiff to have been involved in a protected activity, Plaintiff must have had "a good faith, reasonable belief that the underlying employment practice was unlawful" under Title VII. *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Defendant cannot seriously contend that name calling by a supervisor which includes "dot head" and "sand

-13-

nigger" is lawful. Plaintiff's testimony that his complaints about the name calling were made to Jay and David Cassuto and Dave Manci, all supervisory personnel, is also sufficient evidence from which a jury could conclude that BLS was aware of the protected activity. Also, as discussed above, there is no dispute that Plaintiff suffered an adverse employment action, *i.e.*, he was terminated. Accordingly, the Court finds sufficient evidence of the first three elements of a retaliation claim.

The final element of Plaintiff's prima facie case of retaliation is that a causal connection exists between the protected activity and the adverse action. Because the termination occurred at the very meeting where Plaintiff complained of the harassment, the Court finds that a rational factfinder could infer a causal connection between the alleged adverse actions suffered by Plaintiff and the protected activity. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that temporal proximity alone may suffice to establish causation where proximity "very close"); *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 210 (2d Cir. 2006) (finding causation where alleged "retaliatory animus followed closely on the heels of his protected activity"). Accordingly, Plaintiff's discrimination claim, based on his alleged complaints of national origin harassment, will stand.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, N.Y.
July 18, 2007

/s /
Denis R. Hurley,
United States Senior District Judge

-14-